Argued April 22; affirmed May 24; rehearing denied June 28, 1932

COOPEY *v.* COLE ET AL.

(11 P. (2d) 550)

*W. Y. Masters,* of Portland, for appellant.

*Robert R. Rankin,* of Portland (Plowden Stott, of Portland, on the brief), for respondents.

CAMPBELL, J.   On August 8, 1916, plaintiff sold and conveyed by warranty deed to defendant a certain tract of land near Bridal Veil, Multnomah county, Oregon.

This tract has a frontage of 500 feet on the Columbia River highway, and a depth extending southeasterly from 300 feet on its westerly line to approximately 500 feet at its southeasterly corner. The northerly and westerly boundaries being straight lines from corner to corner. The southerly and easterly lines being irregular.

The tract was carved from a much larger tract owned by the plaintiff and through which a small mountain stream known as Coopey creek flowed in a general northwesterly direction and emptied into the Columbia river.

The tract conveyed to the defendant being situate westerly of Coopey creek with its easterly boundary line established 20 feet westerly of the creek and following the sinuosities of the stream at said distance.

Before the sale to defendant the Columbia River highway, running north 49 degrees and 15 minutes east, was laid out across plaintiff's land, cutting through a small orchard, leaving the larger part of the orchard on the northerly side thereof.

All the land under consideration, both plaintiff's and defendant's, being situate and lying between the south bank of, and below the foot of the bluffs that skirt the Columbia river. Defendant's tract lying westerly of the canyon in which Coopey creek flows, and between there and a depression through which flows a smaller creek referred to in the testimony as the Spring Branch stream.

From Coopey creek westerly, the land rises somewhat abruptly and attains its greatest elevation about 125 feet westerly of the stream. From this elevation it slopes more gently towards the Spring Branch. The surface drainage being in a general westerly direction

from the line of greatest elevation. There is no evidence as to the direction of the subdrainage. The soil is formed by the erosion from the hills mixed with a glacial deposit, thinly overlying an irregular surface of basaltic rock.

At the time of and as a part of the same conveyance plaintiff sold to defendant "the following perpetual water rights and privileges as follows:

"The perpetual right to the use of one-half of the waters of Coopey creek, the same to be divided at a point to be mutually agreed upon * * * and also the perpetual right * * * to construct and maintain on, and across the land of the grantor herein, a ditch or pipeline * * * from said point of division to the land hereinbefore described, the understanding being that said water is to be used on said land of said grantee for such purposes as she * * * may see fit, the major portion thereof to be used as a creek or creeks through said premises, the water of said creek or creeks to be again returned to said Coopey creek south of the Columbia River highway."

During the fall of 1916, defendant began the improvement of the tract purchased. A dam was built in Coopey creek, at a point agreed on, for making a division of the water with the necessary pipes and conduits for conducting the water to defendant's land. A large residence was erected; a swimming tank was constructed; a fishpond was formed and ditches dug to distribute the water over defendant's land and back into Coopey creek. These works were completed in the fall of the year of 1917 at an expense of more than $65,000.

Plaintiff was familiar at all times with what was being done on defendant's premises and made no ob-

jection or protest against any part, or the method of the construction.

During the years following 1920, the water table on the plaintiff's land, northerly of the highway, began to rise and affect the orchard thereon.

Plaintiff commenced this suit on May 14, 1926, and on April 30, 1930, filed her second amended complaint in which she set up three causes of suit. A decree was entered in her favor on her first and third causes of suit and, defendant not appealing, we are not further concerned therewith.

For her second cause of suit, plaintiff alleges the respective ownership of the land affected by this controversy and defendant's rights under her conveyance. She then alleges that in the construction of the ditches, the sunken garden and fishpond on defendant's premises, the work was negligently done, no provision was made for returning said waters to Coopey creek and that it seeps and percolates through the ground into the land of plaintiff, north and northwesterly as aforesaid, rendering the land swampy and unfit for cultivation. That prior to the acts of defendant, she had used said tract for grazing and agricultural purposes and that she had been deprived of that use to her damage in the sum of $600; she alleges that the land, by reason of said overflow has been damaged in the sum of $200 and that a portion of the orchard on her land is damaged in the sum of $925.

Upon trial, a decree was entered dismissing her second cause of suit and she appeals.

There are two assignments of error:

1. The admission of certain testimony over plaintiff's objection.

2. That part of the decree appealed from is not supported by law or evidence.

■ 1. As this is a suit in equity, and is tried by this court de novo, the first assignment of error is immaterial except so far as it might affect costs. This court will ignore any incompetent or immaterial evidence that may have been received by the trial court over the plaintiff's objection.

■ 2. Plaintiff's second assignment of error involves only a question of fact.

A portion of the land, of which she complained as being damaged by the seepage, was sold pendente lite to a man named Vanderlinden. There is no evidence that she received any smaller price for the tract by reason of the alleged seepage. The measure of damages is the difference between the value of the land, in its condition by reason of the alleged seepage, and what it would have been worth if the seepage had not occurred. The only evidence regarding the damage to the tract sold to Vanderlinden was the testimony of plaintiff's husband, who also acted as her agent, on cross-examination. He was asked, "Did you knock off anything on account of the dead trees?" To which he answered, "No, sir, but I could have gotten $100 more for the property had they been alive." "How do you know that?" he was asked, and he answered, "Mrs. Vanderlinden told me." This was not evidence of the value of the property.

There is no competent evidence as to the value of the use of any portion of plaintiff's land. The evidence touching its swampy or wet condition, northerly of the highway, is conflicting; and still more at variance is the testimony regarding the source from which it draws its wet, swampy, or boggy character. It is chiefly the

opinion of experts based on limited and insufficient data.

The trial court had not only the benefit of the atmosphere of the trial but made a personal inspection of the premises. He even went so far as to employ a totally unbiased engineer who carefully examined the premises and who afterwards testified in court and was subjected to a cross-examination by both plaintiff's and defendant's attorneys. This engineer gave it as his opinion that the improvements made on defendant's land were not the cause of the wet condition of plaintiff's land.

Neither the amount of the money expended by defendant in preparing a way to make use of the "water and water rights" she purchased from plaintiff nor the fact that plaintiff made no protest against the construction of the agencies by which defendant saw fit to use the water is of itself a complete defense to plaintiff's complaint, yet should be taken into consideration in order to arrive at a just and equitable determination of the rights of the parties hereto.

It would serve no useful purpose to quote the testimony at length. The trial court was amply justified in finding that plaintiff had failed to establish, by a preponderance of the evidence, her second cause of suit.

The decree of the lower court should be affirmed.

It is so ordered. Without costs to either party in this court.

BEAN, C. J., ROSSMAN and RAND, JJ., concur.